AYRES, Judge.
This is an action to recover property damage to plaintiffs’ Chevrolet panel truck and damages for personal injuries sustained by Mrs. Leona M. Pinchera and their two minor children, and for hospital and medical expenses incurred and for loss of earnings and services as a result of an ac *625 cident July 27, 1953, on Louisiana Highway No. 8, a concrete paved two-lane highway about seven and one-half miles north of Shreveport, Louisiana.
Pursuant to a jury verdict, judgment was rendered in favor of Daniel O. Pin-chera, Sr., individually for $4,245.56 and in his favor for the use and benefit of his minor children, Daniel O. Pinchera, Jr., for. $1,500 and Claire Gail Pinchera for $250, and in his favor for the use and benefit of Motors Insurance Corporation, for $908.50, and in favor of Mrs. Leona M. Pinchera for $3,750, with legal interest on all of said amounts from judicial demand, October 2, 1953, until paid, and for all costs, against the defendants, Everett Low-rence and Employers Casualty Company, in solido. From this judgment defendants have appealed suspensively to this court.
Defendants have abandoned their de-' fense that their driver was not guilty of negligence which constituted a proximate and contributory causé of the accident, and only urge before us that Mrs. Pin-chera’s contributory negligence bars and precludes her and her husband’s recovery on their individual demands. It is conceded that this defense is inapplicable to the minor children who were riding in the family vehicle driven by their mother.
Therefore, the sole issues as to Mr. and Mrs. Pinchera’s demands are these: First, whether she was guilty of contributory negligence in causing the accident, and, second, if not amenable to this charge, then what amounts would compensate for the damages and injuries sustained? Only a question of quantum is presented as to the claims of the minors.
However, plaintiffs have not formally answered defendants’ appeal. On their failure to appeal themselves and in the absence of an answer to the appeal taken by the defendants, the judgment can not be modified to their advantage. Urging a modification of the judgment by an increase in the award in oral argument or brief does not dispense with the requirement of a formal answer to the appeal. This is so well established in the jurisprudence of this State that citation of authorities is deemed unnecessary.
The accident occurred at the entrance of plaintiffs’ driveway leading from the highway to their residence situated to the west of the highway. The driveway was constructed of concrete with aprons or flares approximately 30 feet wide at its juncture with the highway. The highway to the north of the driveway was straight for possibly more than a mile and almost level. Much the same situation existed to the south of plaintiffs’ residence but not for as great a distance. Whatever slight inclines or declines existed in the highway were not sufficient to seriously interfere with or prevent ample view for motor vehicles-traveling in either direction.-
The truck of the defendants involved in the accident was a large international truck with a refrigerator tandem trailer. A second and similar truck of defendant was trailing close behind the aforesaid truck.
The accident occurred about 9:50 P.M. The weather was clear and visibility good. On that occasion, -the Pinchera family had attended church revival services about two miles north of their home. Mrs. Pinchera was returning home with the children in the panel truck driven by her at a moderate and reasonable rate of speed of approximately 40 to 50 .miles per hour. When at a considerable distance from the driveway, she noticed the truck or trucks of defendant approaching from the rear. On nearing her home, possibly 200 to 300 yards away, .she slowed down and, again noticing the trucks, and from appearances ascertaining they were traveling at a very rapid rate of speed, she held out her arm and hand and signaled her intention of making a right-hand turn into her driveway, which signal she continued to give until she actually began the turn into the driveway. Notwithstanding her repeated and continuous warnings and signaling of her intention, defendants’ driver gave no heed, continuing at a fast, dangerous and reckless rate of speed, *626 without making any attempt to avoid the accident, and struck plaintiffs’ panel truck in the rear as it was in the act of turning into the driveway from the highway. Plaintiffs’ vehicle was knocked some 30 to 35 feet and came to rest upside down in the right-hand roadside ditch. Defendants’ truck veered to the left and came to a stop on the opposite side but further down the highway.
The record is void as to any effort of defendant’s driver to prevent the accident. He neither reduced his speed nor attempted to pass in order to avoid running into the Pinchera vehicle, but continued without let-up in the lane directly behind plaintiffs’ truck. 'He gave no signal of his approach from the rear or of any intention to pass.
In fact, defendants’ driver had no intention of passing and made no effort to do so. He does not even claim he intended to pass. His contention that Mrs. Pinchera passed his truck, cut in front of him when only a short distance ahead, possibly some 8 to 10 feet, slowed down and attempted to dart into her driveway, is wholly and entirely without any basis in truth or fact. The testimony of defendants’ driver is absolutely unbelievable and is controverted by several witnesses, in addition to Mrs. Pinchera and Daniel O. Pinchera, Jr., and particularly Mrs. Lila Plaisance. The acts of defendants’ employee constituted the grossest kind of negligence and, in fact, defendants apparently admit as much, for in their brief they state “ * * * defendants do not contend that Roy Eslick, driver of the Lowrence truck, was not guilty of negligence which constituted a proximate and contributing cause to the accident.”
Defendants further attempt to substantiate their plea of contributory negligence on the contentions that Mrs. Pinchera, aware of the close proximity of the following truck and fearing a collision, was guilty of negligence in attempting to make the turn from the highway into her driveway ; and that she thereby precipitated the collision. She did everything in her power by way of repeatedly signaling over a considerable distance to warn the following truck or trucks of her intention to turn to^ the right into her driveway. We are impressed that she was in a hurry to make the turn, fearing that the truck was going to run her down. If that was a mistake or error on her part, it was one of judgment in an emergency unnecessarily and recklessly created by defendant’s driver and for which she could not, and should not, be held responsible.
The driver’s conduct, as disclosed in the record, takes on the appearance of almost utter wantonness and wilfulness and utter disregard on his part for the life and safety of others. He clearly violated the rule with reference to following vehicles as provided in LSA-R.S. 32:234:
“The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway.”
As to the safety of the operation of motor vehicles proceeding in the same direction, the general rale is that the driver must exercise reasonable care, that is, such care as a person of ordinary prudence would exercise under the same or similar circumstances. For instance, it has been stated by Amjur., Vol. 5, P. 656:
“The driver must keep a safe distance behind a vehicle ahead and must have his machine well in hand to avoid injury to the car airead so long as the car ahead is being driven in accordance with the law of the road.
The driver of the front car owes no duty to the rear or trailing car except to use the road in the usual way, in keeping with the laws of the road, and until he has been made aware of it, by signal or otherwise, he has a right to assume either that there is no other automobile in close proximity to his rear or that, being there, it is under such control as not to interfere with his *627 free use of the road in front of and to the side of him in any lawful manner.”
The rule is similarly stated in Vol. 2, Blashfield’s Cyclopedia of Automobile Law and Practice, P. 107, § 931. This general principle is recognized in our jurisprudence. The court in Ardoin v. Robinson, La.App., 176 So. 228, 231, held:
“The driver of an automobile on the public highways must keep his car a safe distance behind vehicles ahead, traveling in the same direction, and must have his car under proper control so as to avoid striking the car ahead so long as the car ahead is observing the rules of the road. The driver of the front car owes no duty to the car in the rear, except to use the road in the usual way, and, until made aware of it' by proper signal, he has a right to assume either that there is no other car approaching him from the rear, or else, if there is such approaching car, it is under such control as not to interfere with the use of the road in his front or to his side in a lawful manner.”
This court in the case of Stevens v. Dean, 6 La.App., 537, 538, held that where two automobiles are being driven along a highway in the same direction, the forward car has the superior right and the driver thereof can not be said to be negligent so long as he uses the road in a lawful manner. This principle was recognized again by this court in Greer v. Ware, 187 So. 842, 844. The driver of the rear car has the better opportunity of making proper observations; a left turn usually involves a greater danger.
The Court of Appeal for the First Circuit of Louisiana, through Judge Le-Blanc, now one of the Justices of our Supreme Court, in Adams v. Morgan, 173 So. 540, 542, appropriately stated:'
“The best and safest rule which it seems possible for the governing authorities and the courts to have formulated is the one which requires the driver of the car following another to maintain such speed and such distance from the lead car as to be able to meet the usual and ordinary movements of a car using the highway.”
After citing the statutory provisions of the Highwáy Regulatory Act, American Jurisprudence and Blashfield, as we have hereinabove referred to or quoted, the opinion continued:
■ “According to the statement therein made, it is the duty of the driver in the rear to have his car under such control as not to interfere with the free use of the road ‘in any lawful manner,’ by the driver of the car ahead.”
See also Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11; Roberson v. Rodriguez, La.App., 186 So. 853.
Defendants contend that Mrs. Pin-chera violated LSA-R.S. 32:236 which provides that the driver of any vehicle upon a highway of this State before starting, stopping or turning from the direct line shall first see that such movement can be made in safety, and cite in support thereof Auckley v. Robbins, La.App., 45 So.2d 380; Cassar v. Mansfield Lumber Co., Inc., La.App., 35 So.2d 797, and as affirmed in part in 215 La. 533, 41 So.2d 209; Sandoz v. Beridon, La.App., 150 So. 25, and Bloomquist v. Schenck, 14 La.App. 94, 129 So. 246.
•On the basis of the factual situations of each of these cases, we are in accord with the pronouncements made therein. They, however, are readily distinguished from the instant case on the facts, and particularly in that all such cases involve a situation where the forward car was attempting to make a left-hand turn across the lane of traffic in which the following -car, in passing, would necessarily be traveling. They did not involve a right-hand turn from and out of a right-hand lane .of traffic and off of the highway and thereby completely removing from any lane of traffic which the following car might choose. They did not involve a situation where, for all practical purposes, the forward car was being run *628 down and would- have apparently been smashed into had it proceeded and continued forward. No conclusion is possible from the evidence other than that the accident was caused solely and only through the negligence of defendant’s employee and that Mrs. Pinchera was free of negligence contributing thereto. Defendants should, therefore, compensate for the damages and injuries sustained by plaintiffs. They contend that the awards are.. excessive and should be reduced.
The award to Daniel 0. Pinchera, Sr., as head and master of the community, included medical and hospital expenses of $745.57, leaving a net award for loss of earnings of $3,500, based on the loss of services of Mrs. Pinchera, his' wife, as housewife and mother and in the business owned and operated by them. Mr. Pinchera, a blind war veteran, owns and operates, with the help and assistance of his wife, a mop and broom selling business. In the conduct of the many phases and numerous operations of this business, such as bookkeeping, driving the delivery car delivering their merchandise, paying the bills and doing clerical work, and all other duties requiring the use of eyesight, Mrs. Pinchera’s services were indispensable. Following the accident and during the period she was incapacitated, as well as that of the children to whom she had to give her services and attention day and night, the business activities all but completely ceased. A considerable portion of the 453 pages of testimony is devoted to the conduct and operation of this business. In addition, financial records were filed and introduced in evidence and bank executives with whom they transacted business were thoroughly interrogated as to plaintiffs business activities. We discover no manifest error in the jury’s findings on this point and as approved by the, trial judge.
Daniel O. Pinchera, Jr., who was ten years of age, suffered a fracture of the right acromion process of the shoulder, an acromioc lavular separation of the shoulder, a broken little finger, a cerebral concussion, the loss of three permanent teeth, broken at their roots, with general contusions and bruises over the head and b6dy, and sustained a slight permanent disability of his right shoulder and a slight permanent disability of his little finger of his right hand. ' He was hospitalized for seven days at the Tri-State Sanitarium and then confined to bed at home for several weeks; medical treatments were administered until the trial in February, 1954. He suffered the normal pain usually accompanying injuries of that nature.
Claire Gail Pinchera, who was seven years of age, who was pinned down by. the over-turned car in the ditch, was also hospitalized for a period of nine days, after which she returned home and "was confined to bed for approximately two weeks. Her injuries consisted primarily of multiple bruises and- abrasions of the leg and arm, a marked bruising of the left calf and knee and lower thigh on the left and a laceration or small cut on the inner aspect of the left thigh, as well as general body bruises, the laceration of the left lower thigh requiring closing by suture. The testimony revealed also that she was unable to straighten her leg and walked with a limp for some time following the accident. She experienced the normal pain usually attendant with such injuries.
Following the accident, Mrs. Leona M. Pinchera was hospitalized until August 8, 1953. Mrs. Pinchera sustained injuries to .her head, neck, back and arm, with numerous cuts, abrasions and bruises on her body generally. After her discharge from the hospital, she was confined at home for several weeks. Dir. J. R. 33rown, who examined and treated her on the night of the accident, testified that his physical examination revealed that she was very nervous, with a limitation of motion in her neck, and soreness over the entire abdomen, and that any movement of the back caused extreme pain. There were marked contusions on the right hip ;■ • there was a wrenching and bruising of ligaments of the neck and lumbar sacral sprain. Her nervous system was much upset and disturbed. It was explained that the wrenching and twisting *629 of the ligaments behind the vertebra are extremely painful without bone pathology being noted by X-ray. Little improvement was noted in the lumbar sacral sprain from the date of the accident to the day of trial, February 17, 1954, and pain in that area remained prevalent. The use of her left arm appears partially, and perhaps permanently, impaired. ' While her recovery will no doubt be retarded on account of the home activities that she will necessarily have to pursue, it appears from the doctor’s testimony that several months will elapse before her complete recovery.
From a careful review of the evidence pertaining to the injuries sustained by these parties, it is our conclusion that the awards are not excessive.
For these reasons, finding no error in the jury’s verdict or in the judgment rendered and signed pursuant thereto, the. judgment appealed from is affirmed at appellants’ costs.