ELLIS, Judge.
This suit is the result of a collision which occurred on Highway 29 at or near the village of Paincourtville at approximately 1:50 P.M. on December 9th, 1949, which was a clear day, when plaintiff’s truck ran into the rear end of defendant’s truck. The plaintiff charges the defendant with the following negligence:
A. Failure to keep a proper look-out and to ascertain if the road was clear before entering the same in the path of oncoming traffic.
B. Entering the traffic lane being used by your petitioner’s truck and trailer, without allowing sufficient space in which to stop the said truck and trailer, a space of approximately fifty feet.
C. Coming to a dead and sudden stop in the middle of the traffic lane being used by your petitioner’s truck and trailer, and without giving any signal of his intention and without allowing your petitioner’s driver any space for stopping his own truck and trailer.
Plaintiff also joined the driver of the truck as defendant, and the highway police officer, but on the day of the trial dismissed the suit as to the latter.
Defendants denied any negligence and charged that the accident was due entirely to the negligence of the driver of plaintiff’s cane truck, and in the alternative plead contributory negligence as a bar to plaintiff’s recovery.
The trial judge decided the case immediately upon termination of the trial on the merits, rejecting and dismissing plaintiff’s suit at his cost, from which judgment the plaintiff has appealed.
 The question presented is entirely one of fact, although it might be well at this point to state that our Supreme Court has held that where a rear end collision occurs on a straight, level highway in broad daylight, the doctrine of res ipsa loquitur is applicable in favor of the forward vehicle. The Court stated that a presumption of negligence against the driver of the following vehicle arises from the fact of the accident itself. See Loprestie v. Roy Motors, Inc., et al., 191 La. 239, 185 So. 11. Plaintiff, therefore, in addition to carrying the ordinary burden of establishing his case by a clear preponderance of the evidence, also carried the burden of overcoming the presumption of negligence against him, which existed from the happening of the accident under the facts and circumstances of this case.
It is shown that just prior to the accident, defendant’s truck and trailer, which was approximately 50 to 55 feet long, was stopped at Guillot’s filling station, which was located on the east side of Highway 29. The truck pulled out from this station, and as it was going south on the highway it was necessary for it to pull completely across the east or north lane of traffic to the west or south lane of traffic, which it did. At the time that it had crossed over to its side of the highway, a state highway officer was traveling north, and in order to avoid striking the defendant’s truck, stopped and gave the proper left hand signal to notify traffic, if any, to his rear. This officer testified that at the time the oil truck pulled out from the filling station he had never seen plaintiff’s cane truck, but that when the defendant’s truck got on the highway he then saw defendant’s cane truck about *267 250 or 275 feet from the point of the accident. It is alleged by the plaintiff and shown hy the evidence that when the highway officer put his hand out to signal traffic to his rear the driver of the defendant’s truck misunderstood it for a signal from the officer for him to stop, which, although the driver contends he had not completely done, the preponderance of the evidence shows that he had done right at the moment of the collision.
At the time that the defendant’s truck pulled out from the filling station, another truck belonging to the defendant’ company was parked across the highway to the south on the right hand side, and at the moment of the impact defendant’s truck had partially passed the parked truck. Defendant’s driver testified that this other truck was parked approximately 250 feet from Guillot’s filling station, whereas the highway officer testified the truck was between 120 and 130 feet from the point that the actual impact took place, and, therefore, if the defendant’s truck and the parked truck belonging to the defendant company were alongside each other at the point of impact, the distance given by the defendant’s driver would exceed that given by the highway officer by approximately 120 to 130 feet. .However, this is immaterial for even if we take the lesser distance of 120 feet that the defendant’s truck had traveled from Guillot’s filling station to the point of impact and add to that the testimony of the driver of plaintiff’s cane truck to the effect that at the time defendant’s truck pulled out from the filling station he was coming south on the highway and was 75 feet away, which would make a total distance of at least 195 feet that the plaintiff’s cane truck traveled and in which he could have stopped.
It is true that plaintiff’s truck was completely blocked on the highway by the parked truck and the defendant’s truck on the highway, and the officers car in the east lane of traffic, and, therefore, counsel for plaintiff contends that the defendant driver created an emergency and as-.a'result was liable in damages. 1
It is also true that the defendant driver did not see the plaintiff’s cane truck until it was approximately 30 feet from the point of impact. He did not see it when he pulled across the highway, possibly because he did not look, hut this failure on his part was not a proximate cause of this accident, neither was the fact that he came to a stop, even though it was done upon the mistaken idea of the highway officers signal, nor was the failure-.of-.the defendant driver to give a warning signal that he was coming to a stop.-
According to the driver of plaintiff’s cane truck, he was proceeding ■ at a speed of 15 miles per hour which we accept as correct, even though the highway officer testified he told him he was traveling at approximately 20 miles per hour' just prior to the collision, and the plaintiff’s driver further testified that when he was 75 feet away and saw the defendant’s truck pull across; the highway from the filling station he immediately applied his brakes. The testimony of eye witnesses is to the effect that he was standing on his brakes, which he admitted, and he further testified that traveling at 1'5 miles per hour on a level highway, which he was doing at the time of the accident, he could stop his truck within 25 feet. Therefore, if we accept his testimony there was no reason, if his brakes were not defective, why he should not have come to a stop and avoided the accident. The positive testimony as well as the physical facts prove that the brakes on the cane truck were defective. They were tested immediately after and at the scene by Guillot, the owner of the filling station, in the presence of the highway officer, both of whom testified that the brakes were defective and were jammed. It is -further shown hy the testimony that the defective condition of the brakes was not due to the accident.'
In addition to this testimony, there were absolutely no skid marks or signs that the brakes had had any effect when applied by plaintiff’s driver.
It is clear that the proximate cause of the collision was not due to any emergency created by the defendant driver but was due solely to the defective condition of the brakes on plaintiff’s truck which, at the *268 time, was hauling approximately 15 tons of sugar cane. According to plaintiff’s driver’s testimony, he had more than 75 feet in which to come to a stop, as he testified when he saw the defendant’s truck pull out across the highway he was that distance away, and that it traveled some further distance down the highway before the collision, and according to the officer’s testimony, when the defendant’s truck crossed on to the highway, he then saw the cane truck approximately 250 feet from the point of impact. If we take the distance as given by the plaintiff’s driver when he first applied his brakes, which was 75 feet north of Guillot’s filling station, and the distance given by the highway officer as to the point of impact, which was 120 to 130 feet south of the filling station, then, of course, plaintiff’s driver had 195 feet to 205 feet in which to bring his cane truck to a stop, which he did not do by reason of the defective brakes.
Judgment affirmed.